UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE DAVIS GROUP, INC.,

     Plaintiff,

v.                                    Case No:  6:14-cv-251-Orl-TBS

ACE ELECTRIC, INC. and THE
HARTFORD CASUALTY INSURANCE
COMPANY,

     Defendants.
_____

## ORDER

This matter comes before the Court on three motions for summary judgment filed by Plaintiff/Counter-Defendant The Davis Group, Inc. ("TDG") and Counter-Defendant Westfield Insurance Company (Docs. 72-74).   The motions are due to be **DENIED**.

### Background[1]

This case arises from a construction project on which TDG was the prime contractor and Ace Electric, Inc. ("Ace") was an electrical subcontractor.   TDG entered into a contract with the United States Army Corps of Engineers (the "Corps") to build a new Radar Approach Control at Seymour Johnson Air Force Base in Goldsboro, North Carolina.   In late December 2011, TDG and Ace executed a subcontract ("Subcontract") under which Ace would perform electrical work in exchange for an initial subcontract price of $1,131,314.13 (Doc. 1-2).   The Subcontract includes a choice of law clause stating that it "shall be governed by the laws of the State of Florida" and a forum selection clause

---

[1] The facts in the following recitation are drawn from the parties' submissions (see Docs. 65-69, 72-74, 81-84, 87-89) and are either uncontroverted or, where controverted, are taken in the light most favorable to Ace, the non-moving party. See Battle v. Board of Regents, 468 F.3d 755, 759 (11th Cir. 2006).

specifying "Orange County, Florida" as the venue for any litigation "arising out of or connected with this Subcontract."   (Subcontract ¶ 17(m)).

The Subcontract set a deadline of November 21, 2012 for Ace to perform its work on the Project.   Should Ace encounter delays not of its own making, the Subcontract provided that the time for completion would be extended for a period of time equivalent to the delays.   However, this extension would "become operative" only if Ace presented "a notice of claim therefore ... in writing to [TDG] within seventy-two (72) hours of the first occurrence of the delay" and TDG approved the extension in writing.   Under the terms of the original Subcontract, such extension would "satisf[y] any and all other claims [Ace] may have against [TDG] on account of such delay." (Subcontract ¶ 10(c)).   Two months after the Subcontract was signed the parties executed an amendment (Doc. 1-2 at 14), which added the following language to paragraph 10(a) of the Subcontract:

> Should Subcontractor, without fault or neglect on its own part, be delayed in the commencement, prosecution or completion of the Work by the fault or neglect of the Contractor or other subcontractors, Subcontractor shall be afforded, as possible remedies for the delay, a reasonable extension of time and/or additional compensation or damages regardless of whether the Contractor receives the same from the Owner or others on the Subcontractor's behalf.

If on the other hand, Ace was responsible for a delay in completion of the work, then it agreed to "reimburse [TDG] for the entire cost and expense suffered or incurred as a result of" the delay, including any liquidated or other damages the Corps might assess against TDG for delays to the Project as a whole.   If "such damages are caused by [Ace] and another person or entity," TDG may "reasonably apportion such damages between the parties, and any such apportionment shall be final and binding upon [Ace]." (Subcontract ¶ 10(b)).

Paragraph 12 of the Subcontract addressed resolution of any disputes that might arise between TDG and Ace relating to the work.   Subparagraph (a) requires Ace to "give all notices and present to [TDG] all claims, disputes and other controversies in the same manner as provided in the Contract Documents for like claims of [TDG] upon [the Corps], and within such time as will enable [TDG] to present such matters to [the Corps] for recognition and payment, but no later than 14 days from the first occurrence giving rise to the claim."   Subparagraph (a) further provides that TDG "will not be liable to [Ace] on account of any such matter not timely or properly presented, unless and until it is allowed by [the Corps]."

At TDG's direction, Ace mobilized to the Project site on February 6, 2012. However, the site was not ready for Ace to begin work, and would not be ready for some three months.   Even after Ace began underground electrical work in May, the delays and interruptions continued.   On September 5, Ace sent TDG a letter expressing its concerns about the lack of progress on the project and TDG's failure to provide Ace with project-related information in a timely fashion.   Ace requested a meeting between its president and TDG's president to "discuss these issues in more detail."   (Doc. 84-22).   TDG responded by providing updated project drawings and a current project schedule, which reflected an extended completion date of March 4, 2013 (Doc. 84-7 at 15).   The Corps, however, had only approved an extension to February 17, 2013 (Doc. 72-1, ¶ 22).

On September 25, 2012, Ace contacted TDG by telephone, requesting extended overhead and general conditions in connection with the delays; TDG's president refused on the ground that the delay was not caused by the Corps (Doc. 84-24).   TDG's president also advised Ace's North Carolina Division Manager that if Ace had any "pressing issues in the future," he "shouldn't hesitate to pick up the phone and give him

[Mr. Davis] a call."   (<u>Id.</u>).   On October 12, Ace sent TDG a letter claiming extended general conditions and overhead in connection with delays in building an on-site parking lot (Doc. 84-25).   TDG once again refused, claiming that Ace agreed in a March 28, 2012 email[2] not to seek costs in connection with modifications to the parking lot schedule (Doc. 84-91).

Over the next several months, the project continued to suffer delays, which Ace periodically expressed concern about in emails and other communications with TDG.   By the extended February 17, 2013 deadline, the project was still far from completion, and the Corps notified TDG that it would assess liquidated damages against TDG for untimely completion under the terms of the prime contract.   On April 30, TDG notified several of its subcontractors that it would exercise its right under their subcontracts to apportion liquidated damages amongst them (Doc. 84-31).   On May 7, Ace, now speaking through counsel, replied that it would not pay any liquidated damages and that it would continue to press its own claims against TDG for damages it sustained as a result of the delays (Doc. 84-32).   In late September or early October 2013, Ace completed its work on the project.   Around this time, Ace's lawyer sent TDG a letter reiterating Ace's intention to pursue its claims and estimating its damages at $185,802.50 (Doc. 84-37).

The project was not substantially completed until November 7, 2013, 262 days after the deadline.   Pursuant to the terms of the prime contract, the Corps assessed 262 days of liquidated damages at $697.78 per day against TDG.   TDG then "worked with a scheduling consultant to determine what tasks were the most critical on a month-by-month basis from January to August 2013."   (Doc. 72-1 ¶ 24).   It determined that "Ace's

---

[2] According to Ace's expert, Paul Britton, this email is not in Ace's Project Record (Doc. 84-7 at 16), and the Court has been unable to locate it in the parties' submissions.

work was on the critical construction path for the months of April, May, June and July 2013," and apportioned 82 days of liquidated damages to Ace (Id. ¶¶ 25, 31).   It also claimed 82 days of field overhead against Ace at the rate of $634.66 per day (Id. ¶ 31).

TDG demanded payment from Ace but payment was not forthcoming.   Instead, on February 11, 2014, Ace sued TDG and Westfield Insurance Company ("Westfield")–a surety on a payment bond TDG provided to Ace pursuant to the Miller Act–in the United States District Court for the Eastern District of North Carolina, asserting claims under the Miller Act (against Westfield), the Subcontract (against TDG), the North Carolina Prompt Pay Act (against both), and quantum meruit (against TDG) (E.D.N.C., Case No. 5:14-cv-88-FL, Doc. 1).   Two days later, TDG sued Ace in this Court for breach of the Subcontract (Doc. 1).   Ace answered and asserted as counterclaims the breach of contract, quantum meruit, and state statutory claims it had raised in the North Carolina action (Doc. 9).   In April, the parties agreed to pursue all of their respective claims in this Court.   In accordance with this agreement, Ace voluntarily dismissed the North Carolina action (Doc. 21), and filed an amended counterclaim against TDG for breach of contract and a claim against TDG and Westfield under the Miller Act (Doc. 23).   In its counterclaim, Ace alleged that "[a]ll conditions precedent to the bringing of this action have been satisfied, waived, or excused."   (Doc. 23 ¶ 19).   TDG and Westfield pled in response to this allegation, "Without knowledge, therefore denied."   (Doc. 32, ¶ 19; Doc. 33, ¶ 19).   On May 14, TDG filed an amended complaint, which asserted an additional claim against Hartford Casualty Insurance Company under a performance bond Hartford issued as surety for Ace (Doc. 29).

After the close of discovery, TDG filed three motions for summary judgment against Ace.   The first seeks summary judgment on TDG's own breach of contract claim

(Doc. 72).   The second seeks summary judgment on Ace's counterclaim on the ground that Ace failed to provide timely and proper notice of the claim as required by the subcontract (Doc. 73).   The third seeks an order of partial summary judgment declaring that Ace is not entitled to recover home office overhead damages, should it prevail on its counterclaim (Doc. 74).[3]   Westfield has joined in the second and third motions.   Ace has filed responses to each motion and submitted evidence supporting those responses (Doc. 81-84).   TDG and Westfield have filed replies (Docs. 87-89), and the motions are now ripe for adjudication.

## Legal Standard

A party is entitled to summary judgment if it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.   FED. R. CIV. P. 56.   An issue of fact is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party and "material" if the fact "might affect the outcome of the suit under the governing law."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avenue CLO Fund, Ltd. V. Bank of America, N.A., 723 F.3d 1287, 1294 (11th Cir. 2013).

On a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.   Avenue CLO Fund, 723 F.3d at 1294 (citing Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985)).   But, the Court need not draw inferences based solely on speculation and conjecture.   Id.   And, the Court "must avoid weighing conflicting evidence or making credibility determinations," Stewart v. Booker T.

---

[3] Hartford also filed a motion for summary judgment against Ace (Doc. 71), which the Court denied by Order dated June 16, 2015 (Doc. 90).

Washington Ins., 232 F.3d 844, 848 (11th Cir. 2000), as it is the province of the jury and not the judge to assess the probative value of the evidence.   Kennett-Murray Corp. v. Bone, 622 F.3d 887, 893 (5th Cir. 1980).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists.   Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Watson v. Adecco Employment Servs., Inc., 252 F.Supp.2d 1347, 1351-52 (M.D.Fla. 2003).   The movant may meet this burden in one of two ways: either by directly negating an essential element of the nonmovant's claim, or by showing that there is insufficient evidence in the materials on file for the nonmovant to establish its burden of proof at trial.   Clark, 929 F.2d at 608. When the moving party demonstrates an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   Celotex Corp., 477 U.S. at 324-35 (internal quotations and citations omitted); Clark, 929 F.2d at 608.   In determining whether a fact is genuinely disputed, the Court may consider evidence not cited by the parties, but it is not required to do so.   FED. R. CIV. P. 56(c)(3).   If a party fails to support an assertion of fact or fails to address another party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if ... the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## Discussion

A. TDG's Breach of Contract Claim

TDG seeks summary judgment on its breach of contract claim, arguing that it had the right to apportion liquidated damages amongst its subcontractors under the terms of the Subcontract and that its apportionment was reasonable under the circumstances (Doc. 72).   Ace argues (1) that it may not be assessed liquidated damages because it did not cause any delays, (2) TDG's apportionment of damages was not reasonable, and (3) TDG failed to account for the unpaid subcontract balance due to Ace (Doc. 81).

The parties agree that paragraph 10(b) of the Subcontract governs the apportionment of liquidated damages (Doc. 72 at 2; Doc. 81 at 3).   Paragraph 10(b) provides in relevant part:

> [Ace] shall reimburse [TDG] for the entire cost and expense suffered or incurred as a result of any and all liquidated or actual delay damages assessed by Owner against [TDG], all actual costs, expenses and damages suffered or incurred by [TDG]..., all damages suffered or incurred by any other contractor or subcontractor on the Project for which [TDG] may be liable, together with any and all other liability, claims, losses, penalties, costs, expenses, damages and causes of action suffered or incurred by [TDG], including [TDG]'s attorneys' fees, resulting in any manner whatsoever, directly or indirectly, from ... delays, disruptions and interferences caused by [Ace]....   In the event any such damages are caused by [Ace] and another person or entity, [TDG] shall have the right to reasonably apportion such damages between the parties, and such apportionment shall be final and binding upon [Ace].

Under the plain language of this provision, TDG is entitled to apportion damages between Ace and other persons or entities only if "such damages are caused" at least in part by Ace.   Paragraph 10(b) gives TDG discretion in apportioning damages between responsible parties and makes TDG's apportionment "final and binding" on Ace, but it does not expressly give TDG the discretion to determine whether Ace "caused" a particular "delay[], disruption[] [or] interference[]."   Moreover, TDG makes no argument

that the provision granting it discretion to apportion damages amongst at-fault parties confers by implication discretion to determine who is at fault.

The summary judgment record, viewed in the light most favorable to Ace, reveals a genuine dispute over whether Ace caused any delays.   In particular, Ace's expert witness, Paul Britton, stated at his deposition, in an affidavit, and in his expert report that Ace was not the cause of any delays in completing the Project (Doc. 66 at 67:1-5, 98:21-25; Doc. 84-6 ¶¶ 4, 7; Doc. 84-7 at 13, 30).   Accordingly, TDG's motion for summary judgment on its breach of contract claim is **DENIED**.

B. Ace's counterclaim: Lack of Notice

TDG asks the Court to grant summary judgment on Ace's counterclaims because Ace failed to provide timely and proper notice as required by the Subcontract.   Ace raises several arguments in response, including that the Subcontract does not require notice for the type of claims it asserts, that it provided any notice that might have been required, that the notice requirement is a promise rather than a condition, and that TDG either waived the notice requirement or is estopped from asserting lack of notice.

Ace also argues, albeit in a footnote, that TDG has "failed to properly plead its defense based on the notice provision," because it has failed to allege lack of notice with particularity.   Here, Ace points to Rule 9(c) of the Federal Rules of Civil Procedure, which provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.   But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."   In its counterclaim, Ace alleged that "[a]ll conditions precedent to the bringing of this action have been satisfied, waived, or excused."   (Doc. 23 ¶ 19).   In their respective answers TDG and Westfield said, "Without knowledge, therefore denied."

(Doc. 32, ¶ 19; Doc. 33, ¶ 19).   And, TDG and Westfield failed to allege lack of notice or failure of a condition precedent in their affirmative defenses (Doc. 32 at 4-6; Doc. 33 at 4-6).[4]

In Jackson v. Seaboard Coast Line R.R., 678 F.2d 992 (11th Cir. 1982), the Eleventh Circuit explained that Rule 9(c) requires a party who "disagrees with a general averment [in a complaint] that conditions precedent have been met" to "raise the issue with a specific and particular denial.   If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked."   Id. at 1009.   Under Jackson, this case is straightforward: Ace pled satisfaction or waiver of conditions precedent in its counterclaim; TDG and Westfield failed to specifically raise failure of condition precedent in their answers; therefore, they have "admitted" Ace's allegations and "cannot [now] attack[]" them.

However, a later Eleventh Circuit case, Associated Mechanical Contractors, Inc. v. Martin K. Eby Construction Co., 271 F.3d 1309 (11th Cir. 2001), complicates the picture. At issue in that case was the defendant's failure to pay retainage to the plaintiff under a contract between the parties.   Id. at 1317.   The defendant argued at the summary judgment stage that it did not owe prejudgment interest on any retainage award since the contract provided that the retainage "shall be paid to the [plaintiff] Subcontractor after ... (5) all disputes, claims, liens, causes of action and/or lawsuits which are related in any way to this Subcontract or Subcontractor's performance of the Work are resolved."   Id.

---

[4] The Court assumes without deciding that the provision in question requires notice as a condition precedent to recovery.   If it does not, and provision of notice is merely a promise, Ace's failure to provide notice would not shield TDG from damages but merely provide TDG a claim for any damages it might have suffered due to untimely notice.

The plaintiff argued that the defendant waived this defense by failing to plead it with particularity.   Id.   The Eleventh Circuit affirmed the district court's denial of prejudgment interest to the plaintiff, explaining:

> The specific denial of performance of conditions precedent may be raised by motion as well as by answer. EEOC v. Klingler Elec. Corp., 636 F.2d 104, 107 (5th Cir.1981) (per curiam); 2 James Wm. Moore, Moore's Federal Practice § 9.04[3] (3d ed.2001). There can be no doubt that Eby articulated the failure to satisfy section 14(5) in its fourth summary judgment motion and memorandum in support. Eby did not waive its rights under section 14(5).

Id.   If the Court applies Associated Mechanical Contractors, it will reach the opposite result and find that TDG and Westfield may raise the failure of a condition precedent in their summary judgment motion.

If Jackson and Associated Mechanical Contractors conflict, the Court must follow Jackson, because it is the earlier decision.   See Walker v. Mortham, 158 F.3d 1177, 1188–89 (11th Cir. 1998).   Before finding that two published Eleventh Circuit decisions conflict, the Court must first attempt "to distill from [these two] decisions a basis of reconciliation and to apply that reconciled rule."   United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993).   Considering the facts, procedural history, and outcome of each case alone, Jackson and Associated Mechanical Contractors are reconcilable.   In Associated Mechanical Contractors, failure of a condition precedent was raised at the summary judgment stage, while in Jackson, the defendant waited until after trial. Compare Associated Mechanical Contractors, 271 F.3d at 1317, with Jackson, 678 F.3d at 1009.

However, the law of the circuit is more than just the results in published appellate decisions.   It also includes the reasoning necessary to reach those decisions.   "[T]he

holding of a case..., as the Supreme Court observed, compris[es] ... both the result of the case and 'those portions of the opinion necessary to that result....'"   United States v. Kaley, 579 F.3d 1246, 1253 n. 10 (11th Cir. 2009) (quoting Seminole Tribe of Florida v. Florida, 517 U.S. 44, 66-67 (1996)).   The reasoning of Jackson is simply irreconcilable with Associated Mechanical Contractors.   Jackson says general denials of conditions precedent are admissions and "cannot later be attacked."   678 F.2d at 1009.

Admissions in a pleading are binding on a party, unless the admission is withdrawn or the pleading amended.   Sinclair Refining Co. v. Tompkins, 117 F.2d 596, 598 (5th Cir. 1941) (citing Pullman Co. v. Bullard, 44 F.2d 347, 348 (5th Cir. 1930)); see also Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983) ("[T]he general rule [is] that a party is bound by the admissions in his pleadings."). Yet, in Associated Mechanical Contractors, the Eleventh Circuit affirmed summary judgment for the defendant, despite a general denial (which under Jackson amounts to an admission) of conditions precedent that, it appears, was never amended or withdrawn. Because the reasoning of Jackson cannot be reconciled with Associated Mechanical Contractors, under the prior panel precedent rule, Jackson is the law of the Eleventh Circuit on this point and controls the case.[5]

Under Jackson, TDG and Westfield's general denials of conditions precedent operate as admissions.   TDG and Westfield's answers do not otherwise raise the issue of notice–for example, in an affirmative defense–such that their technical noncompliance with Rule 9(c) might be excused.   See, e.g., Myers v. Central Florida Investments, Inc.,

---

[5]   In EEOC v. Service Temps, Inc., 679 F.3d 323, 332-33 & nn. 19, 22 (5th Cir. 2012), the Fifth Circuit characterized Jackson's rule as "contrary" to Associated Mechanical Contractors.   While not relevant to this Court's effort to ascertain the law of the Eleventh Circuit, Judge Higginbotham's opinion in Service Temps also explains why Jackson likely represents the better interpretation of Rule 9(c).   Id. at 331-33.

592 F.3d 1201, 1224-25 (11th Cir. 2010) (answer that generally denied conditions precedent, but raised failure to exhaust administrative remedies and untimeliness as affirmative defenses, was sufficient to "discharge defendants' duty under Rule 9(c)," because it gave plaintiff "ample notice that defendants believed that she had failed to file a timely complaint with the EEOC").   TDG and Westfield have not asked to withdraw these admissions or amend their answers to deny with particularity that Ace provided "timely and proper" notice.   Because TDG and Westfield have admitted that all conditions precedent have been satisfied, waived, or excused, their summary judgment motion arguing to the contrary must be **DENIED**.

C. Ace's Counterclaim: Home Office Overhead

In its third summary judgment motion, TDG asks for entry of partial summary judgment that it is not liable to Ace for home office overhead damages.   Damages based on home office overhead costs sustained during delays in the project represent roughly one-third of Ace's $304,234 total alleged damages (Doc. 74 at 2).   TDG argues that Ace is unable to establish the elements of a claim for home office overhead set out in Appeal of Eichleay, ASBCA No. 5183, 60-2 B.C.A. ¶ 2688 (ASBCA 1960).

Whether Ace is entitled to home office overhead damages, or any other particular kind of damages, is a question that may not need to be resolved.   If the Court finds after a bench trial that the delays were entirely Ace's fault, or that for some other reason Ace may not recover, then it will not need to address what kinds of damage Ace may recover. This is not to say that TDG's motion is improper.   Rule 56 allows a party to seek summary judgment on "part of [a] claim or defense," and "part" can include a particular element of damages.   But, nothing requires a court to decide a non-case-dispositive issue raised in a summary judgment motion if a trial may ultimately moot the issue.   So,

courts in this district have denied as premature motions requesting summary judgment on particular elements of damages.   See Romero v. Harmony Retirement Living, Inc., No. 6:12-cv-838-Orl-22KRS, 2013 WL 5230662, at *7 (M.D. Fla. Sept. 15, 2014) (citing Turner v. Aldo U.S., Inc., No. 8:08-cv-1062-T-30MAP, 2009 WL 2489267, at *4 (M.D. Fla. Aug. 10, 2009)).

The benefits of resolving Ace's hypothetical entitlement to home office overhead damages prior to a trial are not worth the cost in judicial resources.   The Court doubts that leaving the issue open for trial will significantly lengthen the time necessary to try the case.   And the parties have not suggested that resolving the issue will significantly advance settlement negotiations.   Accordingly, TDG's motion for partial summary judgment on home office overhead damages is **DENIED**.

### Conclusion

For the reasons given above, TDG's and Westfield's motions for summary judgment (Docs. 72, 73, 74) are **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on June 26, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record